UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JOE BETTENCOURT BORGES,
d/b/a J&M Dairy,
     Debtor.                 Case No. 11-10-12800 S11


AG NEW MEXICO, FCS, ACA;
AG NEW MEXICO, FCS, PCA; and
AG NEW MEXICO, FCS, FLCA;
     Plaintiffs,

v.                              Adversary No. 10-01170 S

JOE BETTENCOURT BORGES; and
MARIA ROCHA BORGES, his wife,
d/b/a J&M Dairy.

     Defendants.

### MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

     Plaintiffs' Motion for Partial Summary Judgment ("Motion") comes before this Court for decision. The Motion asks for a determination that "Plaintiffs have a perfected security interest in the CWT funds" and "that Plaintiffs are entitled to receive the CWT funds for application to the Borges' debts." Doc 17-1, p. 2. For the reasons set forth below, the Court finds cause to grant the motion in part and to deny it in part by determining that one of the Plaintiffs has a perfected secured interest in the funds at issue but that genuine factual disputes preclude the award of the funds to Plaintiffs.[1]

---

     [1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(k); and these are findings of fact and conclusions of law as may be required by

**BACKGROUND**

Plaintiffs' Motion, originally filed in the state district court,[2] asserts that Defendants disposed of their dairy cows, on which Plaintiffs allegedly had a valid, perfected lien, without delivering the proceeds of the disposition to Plaintiffs. The Herd Retirement Program of Cooperatives Working Together ("CWT") is a nationwide program that removes dairy cows from the market in order to stabilize milk prices. Defendants had previously reached an agreement with CWT to remove the cows from the market, for which CWT was to provide compensation to Defendants ("CWT funds"). Plaintiffs assert that they, Plaintiffs, are entitled to the CWT funds in order to apply the funds to Defendants' debt (doc 17-1, p. 1).

---

Rule 7052 F.R.B.P.

[2] On August 28, 2009, Plaintiffs filed a Complaint for Money Due and Foreclosure in the Fifth Judicial District Court, Eddy County, New Mexico ("State Court Action"). On April 10, 2010, Plaintiffs filed a Motion for Partial Summary Judgment with that court (doc 17-1) and a supporting memorandum (doc 17-2). Defendants filed a response on May 19, 2010 (doc 17-3, which is missing a page; the complete document is at doc 25-5). While that motion was still pending, on June 1, 2010, Debtors filed their chapter 11 petition with this Court. On September 20, 2010, this Court entered an order granting relief from the automatic stay for Plaintiffs to pursue the state court litigation. Plaintiffs filed a reply to the response that same day in the State Court Action (doc 18, exhibit 1).

Thereafter, on September 18, 2010, Defendants filed a Notice of Removal of State Court Action (doc 1). Plaintiffs filed a Motion to Remand on November 10, 2010 (doc 14). However, in the stipulated order issued on February 17, 2011, the parties consented to this Court's jurisdiction after removal (doc 27). Plaintiffs also consented to withdraw their jury demand.

**ANALYSIS**

**<u>Summary Judgment Standard</u>**

Summary judgment is only appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 7056(a). The burden is on the moving party to establish a lack of disputed material facts as well as an entitlement to judgment as a matter of law. The Court must view the facts in the light most favorable to the party opposing summary judgment. <u>Harris v. Beneficial Oklahoma, Inc. (In re Harris)</u>, 209 B.R. 990, 995 (10th Cir. BAP 1997)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'") <u>Wolf v. Prudential Ins. Co. of America</u>, 50 F.3d 793, 796 (quoting <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir.1990)) (internal quotation marks omitted); <u>Henderson v. Inter-Chem Coal Co.</u>, 41 F.3d 567, 569 (10th Cir.1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party ...").

**<u>Analysis Under Rule 56(d)</u>**

Defendants contend that this Motion must be denied, without (yet) considering its merits, because Defendants have not yet had

3

access to reasonable discovery as required by Fed.R.Civ.P. 56(d) (doc 25-5, p. 1). Defendants contend that Plaintiffs have failed to produce documents more than two months overdue (as of the time of Defendants' response), and that this Court should deny the motion as premature (doc 25-5, p. 21).

Rule 56(d), made applicable to bankruptcy through F.R.B.P. 7056, explicitly requires that the party opposing the motion, in this case Defendants, show by affidavit that it cannot present facts essential to justify its opposition.[3] Defendants have filed two affidavits (doc 25-5, pp. 26-28 [Maria Borges]; doc 25-2, pp. 1-3 [Karla Poe]) discussing the discovery problems. Defendants have also explained the situation generally in their Response. However, the requirements for relief under Rule 56(d) are rather strict. Not only must the nonmovant produce an affidavit (or declaration – the same thing as far as this Court is concerned), but that affidavit must also "explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts." Trask v. Franco, 446 F.3d 1036, 1042

---

[3] F.R.Civ.P. 7056 reads in relevant part:
**(d) When Facts are Unavailable to the Nonmovant.**
If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavits or declarations or to take discovery; or
    (3) issue any other appropriate order.

(10th Cir. 2006) (quoting <u>Comm. for the First Amendment v.</u>
<u>Campbell</u>, 962 F.2d 1517, 1522 (10th Cir. 1992)) (internal
quotation marks omitted).  "[T]he nonmovant must also explain how
additional time will enable him to rebut the movant's allegations
of no genuine issue of material fact."  <u>Id.</u>  While "a summary
judgment movant's exclusive control of information" favors relief
under Rule 56(d), this by itself is not sufficient. <u>See id.</u>
(citing <u>Price ex rel. Price v. W. Res., Inc.</u>, 232 F.3d 779, 784
(10th Cir. 2000)).

Thus, under <u>Trask</u>, Defendants are required to identify the
probable facts unavailable to them that they seek to discover.
The affidavit of Karla K. Poe identifies no specific probable
facts unavailable to the Defendants (doc 25-2, pp. 1-3).  The
Affidavit of Maria Borges specifies the probable facts
unavailable to them as "the amount AgNM claims is due from
Borges, including the computation of interest and other charges,
the application of payments," and "the amounts held in the slush
fund." (Affidavit of Maria Borges, doc 25-5, p. 28, ¶ 24).

However, the affidavit must also "state with specificity how
the additional material will rebut the summary judgment motion."
<u>Id.</u> (citing <u>Ben Ezra, Weinstein & Co. v. Am. Online Inc.</u>, 206
F.3d 980, 987 (10th Cir. 2000).  The probable facts unavailable to
the Defendants are entirely unrelated to the validity of
Plaintiffs' lien on the CWT funds, and Defendants have not

5

explained, as required by <u>Ben Ezra</u>, how this additional material will rebut the Motion, or even how the unavailable facts are related to Plaintiffs' entitlement to the CWT funds in a general way.  Therefore, Defendants have not made a sufficient showing under Rule 56(d).

### **Validity of the Security Interest**

**Background**

Article 9 of the Uniform Commercial Code ("UCC"), codified at Chapter 55, Article 9 N.M.S.A. 1978, applies to any "transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract."  N.M.S.A. 1978 § 55-9-109(a)(1).  This is what Plaintiff Ag NM in Count 1 claims to have done: created a security interest in Defendants' personal property, including livestock and proceeds of those livestock, by contract.  Thus, the validity of Ag NM's security interest is governed by the UCC.

Generally, in order for a security interest to have attached (that is, to be enforceable against) the collateral, three requirements must be met: (1) value must be given to the debtor, (2) the debtor must have rights in the collateral sufficient to grant the creditor a security interest, and (3) the debtor must have signed or otherwise authenticated a security agreement which describes the collateral.  N.M.S.A. 1978 § 55-9-203(a)-(b).  As a general rule, in order for an attached security interest to

6

become perfected, a financing statement must also be filed.
N.M.S.A. 1978 § 55-9-310.

**Undisputed Facts**

Plaintiffs assert, and Defendants do not dispute, that value
was extended by Plaintiff Ag New Mexico, FCS, FLCA on June 6,
2006, August 17, 2006, May 29, 2008 (doc 17-2, ¶ 3-5; Defendants'
Response, doc 25-5, p. 3 (Defendants only dispute the remaining
amount owed)).  Nor do Defendants dispute that Debtors signed
security agreements with Plaintiff Ag New Mexico, FCS, FLCA on
July 6, 2006, July 13, 2007 and May 29, 2008, providing Ag New
Mexico, FCS, FLCA with a security interest in Debtor's livestock,
proceeds of livestock, and contract rights relating to livestock,
among other things (doc 17-2, ¶ 6-8; doc 25-5, p. 4).[4]  Similarly,
Plaintiffs assert, and Defendants do not dispute, that filing
statements were filed with the New Mexico Secretary of State on
July 17, 2006, and on July 6, 2006 [sic; should be June] with the
Eddy County Clerk as a fixture filing (doc 17-2, p. 3, ¶ 9;
referring to doc 17-3, pp. 31, 33-35; doc 25-5 p. 4-5).[5]  The UCC
definition of "proceeds" includes "(a) whatever is acquired upon
the sale, lease, exchange, exchange or other disposition of

---

[4] Defendants dispute that the referenced security agreements
secure all of the notes.

[5] Debtors dispute that the filings were effective to
perfect, but Plaintiffs, in their pre-bankruptcy filing, do not
assert that this is the case.

7

collateral; (b) whatever is collected on, or distributed on
account of, collateral; (c) rights arising out of collateral."
N.M.S.A. 1978 § 55-9-102(a)(64)(A)-(C).  As Defendants do not
dispute, the CWT funds are proceeds of Debtor's livestock within
this definition (doc 17-2, pp. 6-8).  As Defendants also do not
dispute, the three security agreements and the financing
agreement all extend to proceeds of Debtor's livestock such as
the CWT funds (doc 17-3, p. 19, 23, 26, 31; doc 25-5).

**Effect of the Cross-Collateralization Clause**

As Plaintiffs point out, each of the security agreements
signed by Debtor explicitly secure:

> All present and future debts, regardless of whether this
> Agreement is referenced, such as debts secured by other
> collateral, or whether the future debt is unrelated to or of
> a different type than the current debt, and including those
> debts owed by Debtor or Borrower **to any of Secured Party's
> affiliated institutions, including but not limited to Ag New
> Mexico, FCS, ACA and/or to Ag New Mexico FCS, FLCA,** or their
> respective successors or assigns...

(doc 17-3, p. 19, 23, 26; doc 18, p. 6) (emphasis added).  There
is no dispute that the cross-collateralization clause is valid as
to all debts incurred between Debtors and Creditor Ag New Mexico
FCS, PCA, the Creditor whose name is written both on the security
agreement and on the financing statement (doc 25-5, p. 4-5).
Indeed, it is clear that New Mexico FCS, PCA has a valid
perfected security interest in all of the collateral secured by
the financing statement.  However, what about the other
Plaintiffs?  May their debts also be cross-collateralized in the

8

same security agreement, and then perfected in the same financing statement, without being listed on the statement?

Defendants assert that Ag New Mexico, FCS, ACA ("the ACA") and Ag New Mexico, FCS, FLCA ("the FLCA") are not "secured parties" under any of the three livestock security agreements (doc 25-5, p. 17). The UCC defines a "secured party" as "a person in whose favor a security interest is created or provided for under a security agreement."[6] N.M.S.A. 1978 § 55-9-102(a)(72)(A). Regarding the cross-collateralization agreement:

> Virtually any provision involving collateral is permissible. The collateral may secure both the obligation evidenced by the instrument itself, and any other obligation of the obligor ("cross-collateralization"). It is not necessary to include such provisions in the note or other instrument itself. The note or instrument may require reference to another agreement to determine rights to the collateral.

6B. Anderson U.C.C. § 3-104:28 [Rev] (3d. ed.). Debtor's obligations to both the ACA and the FLCA may therefore be secured by the cross-collateralization agreement (doc 17-3, p. 19, 23, 26). Thus, both the ACA and FLCA meet the basic definition of "secured party" in the sense that they have a security interest in their favor in the personal property secured by the

---

[6] As Defendants point out, Plaintiffs' security agreement misuses the phrase "secured party" by identifying only Ag New Mexico, FCS, PCA as "Secured Party" and not the ACA or the FLCA who are also becoming "secured parties" within the UCC definition (doc 25-5, p. 18). Nevertheless, the intended legal effect of the cross-collateralization clause is clearly to make all three entities secured parties.

agreements.

As an additional objection, Defendants cite the Fifth Circuit's prohibition against "floating secured parties" in Republic Nat'l Bank v. Fitzgerald (In re Fretz), 565 F.2d 366 (5th Cir. 1978) (doc 25- 5, p. 17). However, Fretz is not analogous to the present case. In Fretz, the Fifth Circuit ruled that Revlon did not, by signing a security agreement as a creditor, create a security interest in its wholly owned subsidiaries, that could then be transferred back to the parent company post-bankruptcy. Id. at 369. In the instant case both the ACA and the FLCA were explicitly granted a security interest through the cross-collateralization clause in each of the three security agreements (doc 17-3, p. 19, 23, 26). The ACA and the FLCA are not "floating secured parties" within the meaning of Fretz[7] since the cross-collateralization clause explicitly and specifically grants them a security interest. Despite Defendants' protestations to the contrary, the cross-collateralization clause is a clear grant of a security interest to the ACA and FLCA (doc 25-5, p. 18). Thus, all three Plaintiffs are secured, although not necessarily perfected.

---

[7] Fretz's prohibition against "floating secured parties" may invalidate Plaintiffs' attempts to cross-collateralize future debts to affiliates not identified by name in the security agreement, and almost certainly rules out affiliates not in existence at the time the security agreement was signed. Neither issue arises in this case, however.

10

**Deficiencies in the Financing Statements**

Plaintiffs argue that it is not relevant or is a non-issue whether Plaintiffs' lien is perfected (doc 18, p. 6-7). This may well have been true prior to Defendants' bankruptcy filing when Plaintiffs originally filed their reply in state court; obviously it is no longer the case. "The Bankruptcy Code gives the bankruptcy trustee the rights and powers of a hypothetical person who acquired a judicial lien on the debtor's property at the time that the bankruptcy petition was filed...[she] can avoid any lien inferior to [her] interest in an asset of the bankruptcy estate." In re Roser, 613 F.3d 1240, 1243 (10th Cir. 2010) (citing §544(a)[8]); In re Haberman, 516 F.3d 1207, 1210 (10th Cir. 2008). Thus, any Plaintiff that has not perfected its security interest is not entitled to receive funds stemming from that security interest, during bankruptcy, including the CWT funds.

Defendants argue that Plaintiffs' filing with the Secretary of State is only effective as to Ag New Mexico, FCS, PCA ("PCA")

---

[8] 11 U.S.C. § 544(a)(1) reads:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11

and not ACA or FLCA because PCA is the only party named on the filing statement. Therefore, Defendants argue, ACA and FLCA do not hold perfected security interests (doc 25-5). Similarly, Defendants also protest that Plaintiffs' filing with the Eddy County Clerk is defective and did not result in perfection, because it lists ACA as the only secured party, and Debtors never granted a security interest to that entity (doc 25-5). Plaintiffs do not dispute what is written on the financing statements, only the legal impact of those words (doc 18, p. 2).

Defendants do not contest that the PCA's security interest is perfected nor that the CWT funds are proceeds of Debtors' livestock. Therefore PCA has a perfected security interest in the CWT funds. Debtors however contest the status of the other two entities, ACA and FLCA, as creditors holding perfected secured claims on the basis that they are not named on the financing statement (doc 25-5, p. 5).

The purpose of a financing statement is to give notice to the world, particularly to would-be future creditors of the existence of the liens on a debtor's property. See Case Credit Corp. v. Portales Nat. Bank, 966 P.2d 1172, 1173, 126 N.M. 89, 90, 1998-NMSC-035, ¶ 4 (1998); Flores de New Mexico, Inc. v. Banda Negra International, Inc. In re Fores de New Mexico, Inc.), 151 B.R. 571, 582 (Bankr. D.N.M. 1993). In order to do that effectively, the UCC provides strict guidelines for financing

statements: "A financing statement is sufficient only if it"
"provides the name of the secured party or a representative[9] of
the secured party."  N.M.S.A. 1978 § 55-9-502(a) & (a)(2).  It is
not clear that Plaintiffs' filing statements meet this
requirement.  Thus Plaintiffs have failed to make a showing that
either ACA or FLCA hold perfected security interests in the CWT
funds.

### Affirmative Defenses

In their answer, Defendants raised affirmative defenses.
Doc 5, pp. 7-8.  Although Defendants argue that Plaintiffs have
failed to address their affirmative defenses and therefore the
Motion must fail by virtue of that fact (among others), the
reality is a bit more nuanced.  Instead, the questions are
whether Defendants demonstrate through evidence any issues of
material fact as to the Motion through their affirmative
defenses, or make a sufficient evidentiary and legal showing that
the Motion must be denied by the operation or effect of one of
those defenses.

**Burden of Proof on Affirmative Defenses**

Defendant asserts that because Plaintiff has not addressed
Defendants' affirmative defenses, Plaintiff is not entitled to

---

[9] Plaintiffs do not allege any representative theory and the
Court is obligated to draw the inference on behalf of the
nonmoving party that PCA was not acting in such a capacity. See
Bell, 145 B.R. at 282.

13

summary judgment (doc 25-5, pg. 1-2, 9-10). Defendant asserted twelve affirmative defenses (doc 5, p. 7-8)[10], none of which Plaintiffs have responded to in their motion for summary judgment (doc 17-1). However, it is not necessarily required that the moving party respond to affirmative defenses raised by the nonmovant:

> A claimant is entitled to summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate the right to relief, and every one of the defenses asserted legally are insufficient. Since a single valid defense may defeat recovery, however, claimant's motion for summary judgment should be denied when any defense presents significant fact issues that should be tried.

Wright, Miller, Kane & Marcus, 10B Fed. Prac. & Proc. Civ. § 2734 (3d ed.) ("FPP"). Thus, Plaintiffs' motion is not defeated merely for failure to respond. Plaintiffs' motion could still succeed despite Defendants' affirmative defenses, if those defenses are legally insufficient and present no genuine issues of material fact.

Further, "[w]hen, as here, the nonmoving party will bear the burden of proof at trial, that party must go beyond the pleadings and through [evidence], designate specific facts showing there is a genuine issue for trial." <u>Langley v. Adams County, Colo.</u>, 987

---

[10] The twelve affirmative defenses are, in the order raised, unclean hands, failure ot mitigate damages, waiver & estoppel, breach of obligation of good faith and fair dealing, breach of contract, duress, tender of payment, offset, accord and satisfaction, settlement of claims with Dairy Farmers of America, promissory estoppel, and failure to state a claim.

14

F.2d 1473, 1476 (10th Cir. 1993) (citing <u>Mares v. ConAgra Poultry</u> <u>Co.</u>, 971 F.2d 492, 494 (10th Cir. 1992)); <u>see also Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 324 (1986).  Thus, it is up to Defendants to demonstrate using evidence that their affirmative defenses create a genuine factual issue for trial, or, if the facts are uncontroverted, demonstrate that its defenses are legally sufficient.[11]

**Failure to state a claim**

Defendants' twelfth affirmative defense is failure to state a claim.  For a claim to be valid, the pleading party must comply with the minimum requirements of F.R.B.P. 7008(a) incorporating Fed.R.Civ.P. 8(a)[12].  "Factual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...."  <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (citations, footnote and internal

---

[11] The Court also recognizes Defendants may face difficulty in meeting this burden, given that discovery had not yet been completed at the time the motion was filed.  Defendants might have avoided this problem by submitting a properly documented Rule 56(d) response.

[12] Fed.R.Civ.P. Rule 8(a) states:
A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

15

punctuation omitted).

Defendants' objection does not allege any way in which Plaintiff fails to meet these requirements. Instead, Defendants identify several factual disputes with Plaintiffs, objecting that not all Plaintiffs are secured parties, or even parties, generally (doc 25, exhibit 5, p. 15-16; doc 17, exhibit 2, p.10). Twombly states repeatedly that for the purpose of objections for failure to state a claim, all of the allegations in the complaint are taken as true. Id. Therefore, merely disputing the facts as alleged by Plaintiffs does not and can not constitute an adequate defense of failure to state a claim.

**Failure to Mitigate Damages**

"Mitigation of damages is an affirmative defense and the burden is on the defendant to show that the plaintiff, by the exercise of reasonable diligence, could have minimized damages." Acme Cigarette Serv's, Inc. v. Gallegos, 577 P.2d 885, 891, 91 N.M. 577, 583 (Ct. App. 1978) (Hernandez, J., specially concurring) (citing Mitchell v. James, 138 P.2d 522, 47 N.M. 169 (1943); Rutledge v. Johnson, 465 P.2d 274, 81 N.M. 217 (1970)). Following Langley, since nonmovants would have had the burden of proof at trial, they also have the burden of proof on summary judgment. See Langley, 987 F.2d at 1476. Defendants allege that Plaintiffs, by reneging on their payoff statement and refusing to accept $3 million of the CWT funds as payment, failed to mitigate

16

their damages, and that this presents a bar to recovery (doc 25, exhibit 5, p. 20-21). "The law in New Mexico is clear that in a breach of contract, the non-defaulting party has a duty to use 'reasonable diligence' to mitigate damages." Elephant Butte Resort Marina, Inc., v. Wooldridge, 694 P.2d 1351, 1357, 102 N.M. 286, 292 (1985) (citing Pillsbury v. Blumenthal, 272 P.2d 326, 58 N.M. 422 (1954)). Defendants' allegations, through the Borges Affidavit, present a genuine issue of material fact as to the affirmative defense of mitigation of damages. In particular, the two different payoff statements, copies of which are attached as Exhibits A and B to the Borges Affidavit (doc 25-5, pp. 29-30), raise significant questions about the parties' conduct and intentions.

**Other Affirmative Defenses**

Except for the defenses of failure to state a claim and mitigation of damages, the affirmative defenses are referenced in Defendants' response but not elaborated on (doc 25-5, pp. 9-10, pp. 15-16 and 20-21). Ordinarily that would mean that Defendant would not have established what evidence there is for each of the unelaborated affirmative defenses to serve as a basis for defeating the Motion.

While the Court is obligated to draw all legitimate inferences in favor of the nonmovant, that does not obligate the Court to put together Defendants' case for any affirmative

defense, where Defendants have the burden of proof.  See
generally Harper v. Delaware Valley Broadcasters, 743 F.Supp.
1076, 1090 (D.Del. 1990); see also Bell, 145 B.R. at 282. In
Harper, as in this case, Defendants raised affirmative defenses
in their answer, but did not address those defenses in response
to a motion for summary judgment.  Harper, 473 F. Supp. at 1090.

> A party resisting summary judgment cannot expect to
> rely on the bare assertions or mere cataloguing of
> affirmative defenses. Celotex, 477 U.S. at 323-24, 106
> S.Ct. at 2552-53; Gans v. Mundy, 762 F.2d 338, 340 (3d
> Cir.), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88
> L.Ed.2d 467 (1985). The requirement of pointing to
> specific facts to defeat a summary judgment motion is
> especially strong when the nonmoving party would bear
> the burden of proof at trial, as these defendants would
> on the affirmative defenses they plead. Celotex, 477
> U.S. at 324, 106 S.Ct. at 2553; Security Pacific
> Mortgage & Real Estate Services, Inc. v. Canadian Land,
> 690 F.Supp. 1214, 1219 (S.D.N.Y.1988), aff'd, 891 F.2d
> 447 (2d Cir.1989). Summary judgment will be entered
> "against a party who failed to make a showing
> sufficient to establish the existence of an element
> essential to that party's case, and on which that party
> will bear the burden of proof at trial." Celotex, 477
> U.S. at 322, 106 S.Ct. at 2552.

Id.  In this context, Defendants "should have come forward with
evidence to support their affirmative defenses."  Id. at 1091.
Given that they did not, the Harper defendants "failed to meet
their burden on summary judgment."  Id.  In the instant case,
Defendants have failed to meet their burden to defeat the Motion
with respect to certain affirmative defenses raised in their
answer but not addressed with specific evidence in their response
to the Motion.

Based on the foregoing, and particularly in view of Exhibits A and B to the Borges Affidavit (doc 25-5, pp. 29-30), certain of Defendants' other affirmative defenses pled in the Answer – that is, unclean hands, waiver & estoppel, breach of obligation of good faith and fair dealing, breach of contract, duress, tender of payment and promissory estoppel - all continue to present issues that must be explored at trial[13] in order to resolve the question of how much Defendants are indebted to Plaintiffs.  On the other hand, offset, accord and satisfaction, and settlement of claims with Dairy Farmers of America do not address the issue of payment of the funds to Plaintiffs and therefore for purposes of the Motion, have not been shown to be relevant to that issue.

**Facts in Dispute**

**Amount of Debt**

Plaintiffs contend that many of Defendants' affirmative defenses are "issues that have no bearing on Plaintiffs' request for partial summary judgment as to the CWT proceeds but only as to the total amount of debt owed to Ag New Mexico."  Doc 18, p. 9.  "Plaintiffs have simply asked that the Court grant partial summary judgment in their favor on the question of whether they have a lien on the CWT proceeds."  Id., p. 4.  And further on, Plaintiff recite that "[Borges] simply disputes the manner that

---

[13] Or through a further summary judgment process, though the Court is certainly not suggesting that anyone pursue that route.

19

Plaintiffs have calculated the debt owed, which Plaintiffs
concede is not an issue that is ripe for summary judgment at this
stage of the proceedings." Id., p. 5. However, Plaintiffs'
Motion requested not only a determination that "Plaintiffs have a
perfected security interest in the CWT funds" but also "that
Plaintiffs are entitled to receive the CWT funds for application
to the Borges' debts," (doc 17-1, p. 2). Even if Plaintiffs (or
one of them) have a perfected security interest in the CWT funds,
they are only entitled to receive the funds to the extent that
the Borges' actually owe Plaintiffs money. Thus, the amount of
the debt in question is a material fact as to which there is a
genuine issue. Defendants have demonstrated through evidence,
particularly the Borges Affidavit, that there is a genuine issue
as to the amount of the debts owed by Defendant to Plaintiffs.
Therefore, Plaintiffs' request that the Court rule that they are
entitled to receive the CWT funds must be denied.

**Status of June 2006 Cow Note**

Defendants argue that the May 2008 Cow Note, one of the
debts in question, is not a renewal of a previous, June 6, 2006
Cow Note, but in fact a novation of that note (doc 25-5, pp. 12-
13). This disputed fact does not appear to be material in any
way to the Motion. Even if the June 6, 2006 note was in fact
extinguished by novation, as Defendants argue, Plaintiffs have
clarified that they are not suing on that note (doc 18 p. 8). In

20

addition, the allegations about a "slush fund" not being applied to the debt raise genuine factual issues (doc 25-5, pp. 14-15). So there is no need to examine the note further at this stage.

**CONCLUSION**

For the foregoing reasons, the Court finds that all three Plaintiffs have a security interest in the CWT funds and that Plaintiff Ag New Mexico, FCS, PCA holds a perfected security interest in the CWT funds. Plaintiffs Ag New Mexico, FCS, ACA and Ag New Mexico, FCS, FLCA have not made a sufficient showing that their security interests in the CWT funds are perfected. The Court further finds that the amount of the debt owed by Defendants to Plaintiffs is a material fact as to Count 1 of the Complaint, and that there is genuine dispute as to the amount of such debt. As there is a dispute as to material fact regarding the amount of the debt owed, Plaintiffs' prayer that this Court find that they are entitled to the CWT funds is not well taken and will be denied. An order will enter.

_____
James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  September 6, 2011

Case 10-01170-nlj    Doc 78    Filed 09/06/11    Entered 09/06/11 08:09:39 Page 21 of 22

```
COPIES TO:

Linda S Bloom
PO Box 218
Albuquerque, NM 87103-0218

Richard F Rowley, II
Rowley Law Firm, P.C.
PO Box 790
305 Pile
Clovis, NM 88102-0790

Karla K Poe
201 Third Street NW, Suite 505
Albuquerque, NM 87102

George M Moore
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

William J Arland, III
PO Box 1089
Santa Fe, NM 87504-1357

Gerald R Velarde
2531 Wyoming Blvd NE
Albuquerque, NM 87112-1027
```